## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**FREDERICK BOUDOIN ET AL**        **CASE NO.  2:21-CV-03457**

**VERSUS**        **JUDGE JAMES D. CAIN, JR.**

**AEGIS SECURITY INSURANCE CO**        **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Before the court are cross-motions for summary judgment [docs. 10, 11], filed at the court's direction by the parties to this action on their dispute over coverage for plaintiff's hurricane damages. The dispute arises from the anti-concurrent causation clause in defendant's policy. Both motions are opposed and are now ripe for review.

## I.
### BACKGROUND

This suit arises from damages sustained to plaintiffs' home by Hurricane Laura. At the time the storm made landfall on August 27, 2020, plaintiff's home in Cameron Parish, Louisiana, was covered by a manufactured home insurance policy issued by defendant Aegis Security Insurance Company ("Aegis"). *See* doc. 10, att. 6. The policy provides various forms of property coverage. *Id.* At the beginning of the policy's list of exclusions, however, the Anti-Concurrent Causation Clause ("ACC") states: "We do not pay for loss to the types of property covered under this policy caused by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any

sequence to the loss." *Id.* at 14. The exclusions include coverage for damage "caused by, contributed to or aggravated by" flooding. *Id.* at 16.

After the storm, plaintiffs submitted a claim to Aegis for the property damage they had allegedly sustained as a result of the storm's winds. Aegis denied coverage. Plaintiffs then filed suit for breach of insurance contract. Doc. 1. The parties have now filed cross-motions for summary judgment over the coverage dispute. Docs. 10, 11. Aegis maintains that the ACC excludes coverage in this matter because the covered structures were damaged by wind but then completely displaced and destroyed by the storm surge. It also points to the fact that plaintiffs have obtained coverage for their losses under a flood insurance policy. Plaintiffs contend that, under Louisiana law, an ACC does not exclude coverage when the exempt cause occurs after the covered peril. They also submit an engineer's report purporting to show that the house and other structures were totaled by wind damage before the storm surge reached the property.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go

beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be

made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). When the terms are ambiguous, however, that ambiguity must be construed against the insurer and in favor of coverage. *Id.* at 589–90. The contract must also be interpreted as a whole, with each provision reviewed in light of the others. *Calcasieu Par. Sch. Bd. v. Miller*, 92 So.3d 1200, 1202 (La. Ct. App. 3d Cir. 2012).

The Fifth Circuit has held that ACCs like the one described above are not ambiguous, and may properly exclude coverage for damages caused by a combination of an excluded peril and a non-excluded peril. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429–31 (5th Cir. 2007).[1] Such clauses are not precluded from operation by Louisiana statutory law, case law, or public policy. *Cameron Par. Sch. Bd. v. RSUI Indem. Co.*, 620 F.Supp.2d 772, 780 (W.D. La. 2008). The defendant has the burden of showing that an exclusion applies, by a preponderance of the evidence. *Hartenstein v. State Farm Fire & Cas. Co.*, 2008 WL 11355008, at *3 (E.D. La. June 11, 2008). The burden then shifts to the insured "to prove that the damage is within an exception to the exclusion, *i.e.*, [] the amount of segregable damage which was caused by a peril covered under the policy." *Id.*

---

[1] *Leonard* involved an *Erie* guess made under Mississippi law, from which the Mississippi Supreme Court subsequently departed by holding that such clauses only validly extended where the excluded peril was "concurrent" to the covered peril rather than occurring "in any sequence." *See Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's*, 612 F.3d 383, 387 n. 1 (5th Cir. 2010) (citing *Corban v. United Svcs. Auto. Ass'n*, 20 So.3d 601, 615–16 (Miss. 2009)). However, *Leonard* and its progeny "live on in the Circuit's consideration of ACC clauses arising under Louisiana law." *Arcement v. GeoVera Specialty Ins. Svcs.*, 2015 WL 151325, at *5 (E.D. La. Jan. 12, 2015). One Louisiana appellate court has followed the Mississippi Supreme Court, holding that an ACC cannot exclude coverage where the excluded peril occurs subsequent to the covered peril. *Id.* (citing *Orleans Par. Sch. Bd. v. Lexington Ins. Co.*, 123 So.3d 787 (La. Ct. App. 4th Cir. 2013)). No other Louisiana court has followed suit, however, and the court finds insufficient cause for departing from *Leonard* as applied by the federal courts in this state.

In support of its motion Aegis has provided a "Hurricane Damage Assessment" prepared by David Pertuit, PE, of Crawford Engineering, LLC. Based on observations, weather data, and surveys of neighboring property, Pertuit concludes:

> [I]t is more probable than not, that the roof covering and siding of the subject manufactured home and the roof panels and wall panels of the detached enclosed outdoor kitchen and shed were substantially damaged and the roof decking and framing of the manufactured home and detached outdoor kitchen were partially damaged by wind forces prior to the structures being completely displaced and destroyed by the estimated 16.6 foot storm surge (5.6 feet above the property's concrete slab at the mobile home and outdoor kitchen).

Doc. 10, att. 7, p. 2. He also concludes that, "[d]ue to the aforementioned wind damage, the interior ceilings and walls . . . would have been inundated with rainwater" before the home and other structures were displaced and destroyed by storm surge. *Id.*

Plaintiffs rely on an affidavit from engineer Charles Norman, who also inspected the site and researched the storm's impact on the area. Doc. 11, att. 9, pp. 2–3. Norman notes reports of maximum sustained winds of 150 miles per hour, with higher gusts, and opines as follows:

> Hurricane force winds, heavy rain along with a drop in barometric pressure more likely than not created openings in the roof including lifted decking, windows and extreme rain fall intensity and caused water to intrude and migrate through roof openings into the interior of the attic space and into the ceilings and walls of the house.  It is more likely than not that hurricane force winds removed large sections of the roof along with the decking and opened the entire interior of the home.  This was followed by the wind forces and moments causing the collapse of the main frame wood structure to the ground and off its foundation. Therefore, the hurricane wind (that caused forces and moments to strike the building structure) is the efficient and proximate cause of the total loss. Following the failure of the structure from the wind, the storm surge moved across the ground and washed the building components away. According to NOAA weather data from the Calcasieu Pass the timing

of the peak hurricane force winds and gusts occurred prior to the peak storm
surge by approximately one and a half hours.

*Id.* at 2–3. He states that the damage described by Pertuit from these winds and wind-driven

rain would have rendered the home a total loss. *Id.*

The experts' opinions preclude summary judgment on the ACC's applicability, as

they leave open the question of whether the storm surge in any way caused or contributed

to the loss. *See, e.g.*, *Ledet v. United States*, 2018 WL 2010024, at *3 (E.D. La. Apr. 30,

2018) ("Where there are competing expert opinions, the Court finds that there is a genuine

issue of material fact precluding summary judgment.") Aegis emphasizes, however, that

plaintiffs have filed a claim for this property under their flood insurance policy using the

same building estimate that they used in support of this claim.[2] *See* doc. 13, att. 2, pp. 2,

11–31. Under a flood insurance policy issued by Bankers Insurance Group, they received

$60,000 for damage to the home and $20,000 in personal contents. Doc. 16, att. 1. This

meets or exceeds the coverage provided by Aegis's policy, which offers $60,000 for the

home and $18,000 for personal property. Doc. 10, att. 6, p. 5. Unlike the flood policy,

however, only Aegis's policy provides coverage for unattached structures. *Id.*; *see* doc. 16,

att. 1 (denying coverage for shed).

As Aegis points out, a court of this district has already rejected plaintiffs' attempts

to recover for the same damages under both their homeowner's policy and flood policy in

---

[2] Aegis submits an unsworn declaration from David Munnerlyn, who inspected the property on Aegis's behalf and
states that Roxanne Boudoin told him "that the flood coverage was not enough, and she also wanted her mobile home
to be covered because of wind/tornado damage." *Id.* at 2. The court overrules plaintiffs' objections to the statement as
hearsay and agrees that they are properly considered as statements made by an opposing party in an individual or
representative capacity. Fed. R. Evid. 801(d)(2)(A).

Hurricane Rita. *See Boudoin v. State Farm Ins. Co.*, 2007 WL 2066583 (W.D. La. July 13, 2007). The court emphasized that it was well settled under Louisiana law that a policy owner could "recover under all available coverages provided that there is no double recovery." *Id.* at *4 (quoting *Cole v. Celotex Corp.*, 599 So.2d 1058, 1080 (La. 1984)). Accordingly, plaintiffs holding separate policies covering, respectively, wind and flood damage could not "obtain a double recovery by recharacterizing as wind damage those losses for which they have already been compensated by previously attributing them to water." *Id.* (internal quotations and alterations omitted). However, such plaintiffs could still recover under both policies if they could show that the damage was segregable. *Id.*

Here both reports establish that the covered structures were totaled at some point and were washed away completely with the storm surge. Plaintiffs have obtained full coverage for their contents and home under the flood policy. Accordingly, they cannot show that these damages are segregable. As for the shed, however, and possibly other detached structures, these properties were also total losses in the hurricane but were not covered under the flood insurance policy. Norman's report provides sufficient support for the notion that they might have been totaled by wind and wind-driven rain before the storm surge reached the plaintiffs' property. Accordingly, questions of fact remain as to whether this property is covered under Aegis's policy or whether coverage is excluded under the ACC clause.

**IV.**
**CONCLUSION**

For the reasons stated above, Aegis's Motion for Summary Judgment [doc. 10] will

be **GRANTED IN PART** and **DENIED IN PART** while plaintiffs' Motion for Summary

Judgment [doc. 11] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 23rd day of November, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**